

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East-7th Floor*
*Brooklyn, NY 11201*

**BY ECF**　　　　　　　　　　　　　　　　　　　　February 23, 2023

The Honorable Nina R. Morrison
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

　　　　Re:　　*F.C.C., et al. v. United States of America*, Case No. 2:22-cv-5057 (NRM) (JMW)

Dear Judge Morrison:

　　Pursuant to Rule 5.1 of Your Honor's rules, Defendant United States respectfully requests a pre-motion conference for its proposed motion to transfer this action or, alternatively, to dismiss.

## I.　Relevant Background

　　Plaintiff FCC[1] alleges that he is a Honduran national who, in May 2018, and despite a pre-existing order of removal for a previous unlawful entry, chose to unlawfully enter the United States. Further, this time, FCC chose to bring along his minor daughter, Plaintiff ACL. FCC alleges that he was both apprehended by U.S. Customs and Border Protection (CBP) and separated from ACL in Arizona, before being removed to Honduras. Meanwhile, CBP transferred ACL to the Department of Health and Human Services'(HHS) Office of Refugee Resettlement (ORR), and she was placed at Mercy First, an independent contractor for ORR, located in Nassau County, New York. In September 2018, after an immigration judge issued a voluntary departure order, ACL returned to Honduras and rejoined FCC and her mother (who had remained behind in Honduras).

　　Plaintiffs sued under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 (FTCA), seeking review of the May 2018 decision to separate FCC from ACL. They assert FTCA claims for negligence, intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), abuse of process, and loss of consortium.

　　Notably, FCC and ACL did not cross the border in this district, were not separated by CBP in this district, and do not presently live in this district. FCC and ACL admit that they presently live in the United States. FCC's removal order has been stayed; he presently has work authorization; and his wife and second child have joined him and ACL in the United States.

## II.　Proposed Motion To Transfer On Venue Grounds

　　Transfer on venue grounds to the District of Arizona is warranted. Under the FTCA, a tort claim may be prosecuted against the United States "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Plaintiffs do not allege that they reside in this district, and the gravamen of their claim is in Arizona, where they

---

[1] Plaintiffs' motion to use pseudonyms FCC and ACL, ECF No. 5, was resolved by stipulation; the parties agreed to those initials, on the understanding that Defendant did not concede the allegations underlying the motion, *id.* No. 13.

allege that various "federal officers" wrongfully separated FCC from ACL. *See* Compl. (intro. p. 1) (challenging separation of FCC from ACL as part of alleged attempt to deter asylum seekers).

Even if the Court were to determine that venue is proper here, transfer to the District of Arizona would still be warranted under 28 U.S.C. § 1404(a). Courts generally consider if the action could have been brought in the proposed forum and, if so, whether the balance of convenience and justice favor transfer. *W.P.V. v. United States*, 2023 WL 1991426, at *3 (S.D.N.Y. Feb. 14, 2023). Here, Plaintiffs allege that federal officers apprehended, detained, and separated them in Arizona. Thus, this action could have been commenced there; in fact, officers and agents who would likely be called as witnesses in this action are predominantly (if not entirely) based in Arizona, and the tort law of Arizona would apply to those acts. Nor is this district more convenient to Plaintiffs, who do not allege they reside here. Indeed, last week, a court in this Circuit transferred a similar case under nearly identical circumstances. *See W.P.V.*, 2023 WL 1991426, at *6 (transferring matter from S.D.N.Y. to W.D. Tex., where plaintiffs did not reside in S.D.N.Y., and where their apprehension and separation occurred in W.D. Tex., even though minor was later housed in the Bronx, reasoning that "the operative events that involve the Government and trigger its potential liability under the FTCA predominantly, if not entirely, occurred in the Western District of Texas"); *Barry v. United States*, 2022 WL 4467504, at *4-8 (S.D.N.Y. Sept. 26, 2022) (transferring FTCA matter to Texas where plaintiff crossed southern border and was initially detained there before being sent to New York facility).

**III.     Proposed Motion to Dismiss The Action On Multiple, Independent Grounds**

   A.   Independent Contractor Doctrine Bars Claims Arising Out Of Any Action Taken Here

To the extent Plaintiffs' claims arise from conduct by Mercy First – the privately owned facility where ACL was temporarily housed in New York – this suit warrants dismissal for lack of subject-matter jurisdiction. The FTCA does not waive the Government's sovereign immunity for acts or omissions committed by a federal contractor. *See* 28 U.S.C. § 2671. Whether an individual or entity is an independent contractor depends on the Government's ability to "control the detailed physical performance of the contractor" and whether it supervises the day-to-day operations of the contractor. *See United States v. Orleans*, 425 U.S. 807, 814-15 (1976). Plaintiffs do not allege that the Government exercised detailed supervision or day-to-day control, and to the contrary, acknowledge that Mercy First is a privately owned facility. While ORR was entitled to conduct periodic monitoring to ensure minimum standards were met, day-to-day care for minors was delegated to Mercy First. Thus, the independent contractor exception bars Plaintiffs' claims insofar as they are predicated on allegedly tortious conduct that occurred at Mercy First, *i.e.*, after Plaintiffs' separation in Arizona. *See Korotkova v. U.S.*, 990 F. Supp. 2d 324, 327-29 (E.D.N.Y. 2014); *Yesina v. U.S.*, 911 F. Supp. 2d 217, 221-22 (E.D.N.Y. 2012).

   B.   The Lack Of A Private Analogue Bars This Suit Arising Out Of Action Taken Here

Even were the Court to find the independent contractor exception inapplicable, to the extent that Plaintiffs allege that tortious conduct occurred in this district, the absence of a private analogue would strip jurisdiction. The private analogue requirement asks "whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." *McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016) (citations omitted); 28 U.S.C. §§ 1346(b)(1), 2674. The Second Circuit has held that there is no "freestanding duty to abide by private regulations" under New York law, such that FTCA claims that purport to be based on government officials' failure to abide by federal regulations and duties under those regulations "is

action of the type that private persons could not engage in and hence could not be liable for under local law." *Id.* at 127. The same is true for arguments arising out of the timing of, *inter alia*, ACL's removal proceedings: under New York law, a plaintiff "may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in … initiating a prosecution'" such that there is no "private analogue" for an FTCA claim predicated thereon. *Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017) (citations omitted). Thus, any FTCA claim based on, *inter alia*, putative delay as to any process for reuniting, with her family, a child illegally brought into the country, is barred for lack of a private analogue.

    C.   The Discretionary Function Exemption Bars Claims Arising From The Reunification Pace

The FTCA does not waive the United States' sovereign immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused"—*i.e.*, the "discretionary function exemption" or DFE. 28 U.S.C. § 2680(a). The DFE bars FTCA liability when: (i) the alleged wrongful acts involve an element of judgment or choice and are not compelled by statute or regulation; and (ii) the judgment or choice in question is *susceptible* to policy analysis (regardless of the subjective intent in exercising that discretion in a specific case). *United States v. Gaubert*, 499 U.S. 315, 322-25 (1991). The purpose is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Clayton v. United States*, 2019 WL 9283977, at *15 (E.D.N.Y. Aug. 1, 2019), *R&R adopted*, 2020 WL 1545542 (E.D.N.Y. Mar. 31, 2020) (citation omitted) (citing *Gaubert,* 499 U.S. at 323).

To the extent that the Complaint challenges the reunification process as tortious, the DFE bars such claims. The Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) defines an "unaccompanied alien child" (UAC), in relevant part, as one who has "no parent or legal guardian in the United States [that] is available to provide care and physical custody," 6 U.S.C. § 279(g)(2), which triggers statutory requirements to ensure safety and well-being—leaving room as to how to implement these safeguards. *See, e.g.*, 6 U.S.C. § 279(b)(1)(H) (stating that the ORR is responsible for "reuniting unaccompanied alien children with a parent abroad in appropriate cases" but not specifying the manner); 8 U.S.C. § 1232(b)(3) (custody of UACs shall be transferred to HHS within 72 hours of UAC determination); 8 U.S.C. § 1232(c)(3)(A) (prohibiting release of UAC to a custodian unless HHS makes suitability determination); *Lucas R. v. Becerra*, 2022 WL 2177454, at *24 (C.D. Cal. Mar. 11, 2022) (TVPRA "provides broad discretion to HHS to make release decisions"). The Government's discretion encompasses the determination of how to safely effect a minor's departure to her country of origin. *See, e.g.,* ICE Field Office Juvenile Coordinator Handbook (FOJC Handbook) at 21 (prohibiting repatriation of UAC absent placement in removal proceedings); ORR Policy Guide Section 1.1 ("ORR policies for placing children and youth in its custody into care provider facilities are based on legal requirements as well as child welfare best practices in order to provide a safe environment … appropriate for the child's needs."). Here, the process included attempts to get identity documents from ACL's mother, facilitate ACL's access to her own legal counsel including at EOIR, coordinate with the Honduran consulate to get travel documents, and keep ACL in regular contact with her parents. To the extent Plaintiffs challenge the Government's discretion in how to facilitate ACL's safe release, the DFE bars the suit. *Fazi v. United States*, 935 F.2d 535, 538 (2d Cir. 1991)

(DFE precludes "claims based on day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is the wisest").[2]

### D. The Due Care Exception Bars Certain Claims

To the extent Plaintiffs contend that the Government is liable for transferring ACL to ORR custody, that claim would be barred by the FTCA's exception for actions taken while reasonably executing the law. 28 U.S.C. § 2680(a). This exception "bars tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also Clayton*, 2019 WL 9283977, at *5 n.22 (same); *Nwozuzu v. United States,* 712 F. App'x 31, 33 (2d Cir. 2017) (legal uncertainty does not preclude due care). Once the discretionary decisions were made to refer FCC for prosecution and to detain him pending the resolution of his immigration proceedings, the TVPRA required CBP to transfer ACL to ORR custody.

### E. Plaintiffs Have Otherwise Failed To State A Viable Claim For Actions Taken Here

Even if the Court believes transfer is not warranted because some part of the tort allegedly occurred in New York, and further believes that jurisdiction exists, Plaintiffs fail to state a claim based on actions taken *in New York*. Plaintiffs' IIED claim fails because that claim requires a showing of "extreme" and "outrageous" conduct, *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985), which safe housing is not, and also "public policy bars claims sounding in [IIED] against a governmental entity." *De'Bey v. City of New York*, 2022 WL 909790, at *8 (S.D.N.Y. Mar. 29, 2022). Plaintiffs' NIED and negligence claims also fail because Plaintiffs fail to identify the nature of the duty the Government breached *in New York*. The gravamen of the allegations is that the Government harmed Plaintiffs through an *intentional,* not negligent, family separation policy, and at that *in Arizona*, *see Regeda v. City of New York*, 2012 WL 7157703, at *13 (E.D.N.Y. Sept. 7, 2012); moreover, to the extent Plaintiffs' claim is based on care in investigating ACL's family situation to effect *reunification*, "negligent investigation" is not actionable under New York tort law. *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).[3] Finally, the loss of consortium between FCC and ACL is not actionable: "New York does not recognize a child's loss of parental consortium or a parent's loss of a child's affection, companionship or society." *Grunwald v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, 2020 WL 2192683, at *4 (S.D.N.Y. May 6, 2020). Insofar as any tort allegedly occurred in New York, it warrants dismissal.

For all these reasons, the Government respectfully requests a pre-motion conference. Thank you for Your Honor's consideration of this request.

---

[2] The DFE *separately* precludes Plaintiffs' challenge to the Government's decision to prosecute individuals, like FCC, for illegal entry who migrated with their children, as well as the decision to detain FCC pending his removal rather than releasing him, which required transfer of ACL to ORR custody. The DFE shields prioritizing enforcement of federal immigration law and decisions as to whom to arrest, which are discretionary decisions. *See Peña Arita v. United States*, 470 F. Supp. 3d 663, 686–87 (S.D. Tex. 2020) (whether to prosecute and the priority of prosecutorial decisions are "obviously grounded in considerations of public policy" and "intended to be shielded by the discretionary function exception"); *Nielsen v. Preap*, 139 S. Ct. 954, 959 (2019) ("The second sentence [of 8 U.S.C. § 1226(a)] generally gives the Secretary the discretion either to detain the alien or to release him on bond or parole.").

[3] To the extent Plaintiffs state an abuse of process claim arising from detaining FCC after he illegally re-entered the United States, that tort did not occur in New York, prosecutorial discretion is not abuse, and even "a malicious motive alone ... does not give rise to a cause of action." *Coleman v. NYC*, 49 F. App'x 342, 345–46 (2d Cir. 2002).

                                          Respectfully submitted,

                                          BREON PEACE
                                          United States Attorney

By:   */s/ Christopher Volpe*
        Christopher D. Volpe
        Kimberly A. Francis
        Layaliza K. Soloveichik
        Assistant U.S. Attorneys
        718-254-6188
        718-254-6147
        718-254-6298
        christopher.volpe@usdoj.gov
        kimberly.francis@usdoj.gov
        layaliza.soloveichik@usdoj.gov

cc:     Matthew K. Handley, Esq. (by ECF)