UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

F.C.C., *on his own behalf and on behalf of his minor child, A.C.L.*,

         Plaintiffs,

   - against -

UNITED STATES OF AMERICA,

         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Civil Action
No. 2:22-cv-5057

(Morrison, J.)
(Wicks, M.J.)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO TRANSFER VENUE


BREON PEACE
United States Attorney
*Counsel for Defendant*
271-A Cadman Plaza East
Brooklyn, New York 11201

March 24, 2023


Of Counsel:

CHRISTOPHER D. VOLPE
KIMBERLY A. FRANCIS
LAYALIZA SOLOVEICHIK
Assistant U.S. Attorneys

## Table of Contents

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND LEGAL BACKGROUND ....................................................................... 3

   I.   Statutory and legal framework......................................................................................... 3

      A.   Legal framework for foreign nationals entering the country........................................ 3

      B.   The *Flores* Agreement ............................................................................................. 4

      C.   Executive Branch enforcement.................................................................................... 5

   II.  Factual and procedural background .................................................................................. 7

      A.   Plaintiffs unlawfully cross the southern border into Arizona...................................... 7

      B.   Plaintiffs are separated in Arizona.............................................................................. 8

      C.   Plaintiffs commence this action in New York............................................................. 9

LEGAL STANDARD...................................................................................................... 9

ARGUMENT .................................................................................................................... 10

   I.   Under § 1402(b), the Eastern District of New York is not a proper venue for this FTCA suit ......................................................................................................... 11

   II.  Alternatively, the Court should transfer this action to the District of Arizona in the interests of justice and for the convenience of the witnesses ........................................................... 13

      A.   This action could have been commenced in the District of Arizona.......................... 14

      B.   The balance of relevant factors strongly favors transferring this matter to Arizona.. 14

CONCLUSION.................................................................................................................. 23

## Table of Authorities

### FEDERAL CASES

*Alpha Indus., Inc. v. Alpha Clothing Co., LLC*, No. 21-cv-87
(KPF), 2021 WL 2688722 (S.D.N.Y. June 30, 2021) .................................................. 17, 21, 23

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013).................................................................................................... 14

*Barry v. United States*, No. 21-cv-7684 (BCM), 2022 WL 4467504
(S.D.N.Y. Sept. 26, 2022)......................................................................... 17, 18, 20, 22

*Burgos v. United States*, No. 16-cv-7091 (RA), 2017 WL 2799172
(S.D.N.Y. June 27, 2017)........................................................................................... 13, 14

*Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172
(E.D.N.Y. 2003)......................................................................................................... 10

*Delta Air Lines, Inc. v. Assoc. of Flight Attendants, CWA*,
720 F. Supp. 2d 213 (E.D.N.Y. 2010) ....................................................................... 14

*FDIC v. Meyer*, 510 U.S. 471 (1994) .............................................................................. 21

*Feng Chen v. Sessions*, 321 F. Supp. 3d 332 (E.D.N.Y. 2018) ...................................... 9

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) ............................................................... 4, 5

*Guccione v. Harrah's Mkt'g Servs. Corp.*, No. 06-cv-4361 (PKL),
2009 WL 2337995 (S.D.N.Y. July 29, 2009) ............................................................ 17, 18

*Hernandez v. Graebel Van Lines*, 761 F. Supp. 983 (E.D.N.Y. 1991)........................... 19, 20, 21

*Jones v. U.S.*, No. 02-cv-1017 (JG), 2002 WL 2003191, (E.D.N.Y. Aug. 26, 2002) ........... 20, 22

*Kauffman v. Anglo-Am. Sch. of Sofia*, 28 F.3d 1223 (D.C. Cir. 1994) ......................... 12

*Korotkova v. U.S.*, 990 F. Supp. 2d 324 (E.D.N.Y. 2014).............................................. 17

*Larca v. United States*, No. 11-cv-3952, 2012 WL 6720910
(S.D.N.Y. Dec. 16, 2012)........................................................................................... 13

*Minnette v. Time Warner*, 997 F.2d 1023 (2d Cir. 1993) ............................................... 10

*Mohsen v. Morgan Stanley & Co. Inc.*, No. 11-cv-6751,
2013 WL 5312525 (S.D.N.Y. Sept. 23, 2013) .......................................................... 10

*Moler v. Wells*, 18 F.4th 162 (5th Cir. 2021)................................................................. 12

*Monfried v. Sigma Fin. Corp.*, No. 15-cv-2806 (VSB),
2016 WL 9724977 (S.D.N.Y. June 14, 2016) ............................................................ 20

*N.Y. Marine & Gen. Ins. Co. v. Lafargee N. Am.*, 599 F.3d 102 (2d Cir. 2010) .................. 10, 13

*Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325
(E.D.N.Y. 2006) ............................................................................................ 15, 19

*NY Metro Radio Korea, Inc. v. Korea Radio USA, Inc.*,
No. 07-cv-4123, 2008 WL 189871 (E.D.N.Y. Jan. 18, 2008) ........................................ 9

*Reuber v. U.S.*, 750 F.2d 1039 (D.C. Cir. 1984) ...................................................... 12

*Richards v. United States*, 369 U.S. 1 (1962) ......................................................... 12

*Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246
(E.D.N.Y. 2010) ...................................................................................... passim

*Schuyler v. Sun Life Assurance Co.*, No. 20-cv-10905 (RA)
(BCM), 2021 WL 5853991 (S.D.N.Y. Dec. 9, 2021) .................................................. 15

*Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858
(S.D.N.Y. 1991) ............................................................................................. 15

*W.P.V. v. United States*, No. 21-cv-4436 (JPC), 2023 WL 1991426 (S.D.N.Y. Feb. 14, 2023)
...................................................................................................... passim

*Wald v. Bank of Am Corp.*, 856 F. Supp. 2d 545 (E.D.N.Y. 2012) ............................... 13

*Williams v. Swack*, No. 12-cv-1552 (CBA), 2013 WL 5423791
(E.D.N.Y. Sept. 26, 2013) ................................................................................. 15

## FEDERAL STATUTES

6 U.S.C. § 279 ...................................................................................... passim

8 U.S.C. § 1225(a)(1) ..................................................................................... 3

8 U.S.C. § 1225(b) ......................................................................................... 3

8 U.S.C. § 1232 ...................................................................................... passim

8 U.S.C. § 1325 .......................................................................................... 6

8 U.S.C. § 1326 ..................................................................................... 3, 6, 7

28 U.S.C. § 1346(b) .................................................................................... 1, 21

28 U.S.C. § 1402(b) ........................................................................... 2, 11, 12, 14

28 U.S.C. § 1404 ........................................................................................ passim

28 U.S.C. § 1406(a) ............................................................................................. 9

## FEDERAL RULES

Federal Rule of Civil Procedure 12(b)(3) ........................................................... 1, 9

Federal Rule of Civil Proceduree 45(c)(1) ............................................................ 20

Pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. §§ 1404(a) and 1406, defendant United States of America respectfully submits this memorandum of law in support of its motion to transfer venue to the District of Arizona or, in the alternative, to the district in which Plaintiffs reside.

## PRELIMINARY STATEMENT

In April 2018, Plaintiff F.C.C. – who had previously been removed from the United States after unlawfully entering the country in 2014 – again unlawfully crossed the United States-Mexico border into Arizona, this time bringing his minor daughter, A.C.L.[1] In accordance with the law, federal agents apprehended Plaintiffs and placed them into detention in Arizona. Over the ensuing days, Plaintiffs were separated from one another: F.C.C. was held at various facilities in Arizona until his eventual removal to Honduras, while, in the interim, A.C.L. was sent to, and temporarily and safely housed at Mercy First, a residential shelter in Syosset, New York, until an immigration judge issued the voluntary departure order enabling her to return to Honduras to rejoin her mother (who had remained in Honduras) and F.C.C. (who had since returned to Honduras).

Plaintiffs commenced this action solely under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 ("FTCA"), asserting claims for intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, loss of consortium, and abuse of process arising out of their separation in 2018. Plaintiffs filed suit in the Eastern District of New York – despite having crossed the border in Arizona, having been apprehended in Arizona, having been detained in Arizona, and, most notably, having been separated in Arizona. Indeed, the only alleged link to this district is that A.C.L. was temporarily housed at the residential shelter Mercy First.

---

[1] The parties have stipulated to the use of Plaintiffs' initials, F.C.C. and A.C.L., in this litigation. *See* ECF No. 13.

This action does not belong in this district. Under 28 U.S.C. § 1402(b), venue is proper in only two locations: (i) where a plaintiff lives; and (ii) where the challenged acts or omissions occurred. Plaintiffs, who have returned to the United States, do not live in this district, or even in this State. Thus, venue would be proper here only if Plaintiffs' apprehension and separation – the allegedly tortious acts – had occurred in the Eastern District of New York. But they did not. They occurred in the District of Arizona. This action should therefore be transferred to that district, or to the district in which Plaintiffs reside.

Even were venue proper here, the Court should nonetheless transfer this action to the District of Arizona under 28 U.S.C. § 1404, in the interest of justice and for the convenience of the witnesses. The operative facts giving rise to the Government's alleged liability took place in Arizona, from Plaintiffs' apprehension to their separation. Predictably, the vast majority of witnesses to those acts are also located in and around Arizona. According to the Government's preliminary assessment, U.S. Customs and Border Protection ("CBP") – the agency that initially apprehended and detained Plaintiffs – has identified twenty-four (24) individuals who may have knowledge of the facts alleged in Plaintiffs' complaint; twenty of them live in Arizona, and three others live near the southern border. Likewise, U.S. Immigration and Customs Enforcement ("ICE") has also confirmed that its likely witnesses are in Arizona. Even Plaintiffs themselves, who failed to disclose in the Complaint the state in which they live, appear to live in a southern border state, far from New York. And because Arizona is the location where the putatively tortious conduct alleged occurred, Arizona state law would likely apply. The U.S. District Court for the District of Arizona would necessarily be more familiar both with Arizona law as well as any facts or issues common to the various cases pending there. Accordingly, Arizona – not New York – is the center of gravity for this action, as another New York court has recently noted under similar

circumstances. *See W.P.V. v. United States*, No. 21-cv-4436 (JPC), 2023 WL 1991426 (S.D.N.Y. Feb. 14, 2023). The Court should transfer this action to the District of Arizona or, in the alternative, to the district where Plaintiffs reside.

**FACTUAL AND LEGAL BACKGROUND**

I.      **Statutory and legal framework**

    A.  **Legal framework for noncitizens entering the country**

Noncitizens arriving in the United States, including those who do not arrive at a designated port of entry, are generally considered "applicant[s] for admission" and must be "inspected by immigration officers" upon their arrival. 8 U.S.C. §§ 1225(a)(1), (3). When a noncitizen enters the United States outside of an official port of entry, he or she commits a violation of federal criminal law. *See* 8 U.S.C. § 1325(a) (imposing fines and imprisonment up to 6 months for a first offense and up to 2 years for a subsequent offense). Federal law also makes it a crime for a noncitizen who was previously removed from the United States to thereafter re-enter unless the Attorney General has expressly consented, in advance, to reapplication for admission or the foreign national can establish that such advance consent is not required. *See* 8 U.S.C. § 1326(a) (imposing fines and imprisonment up to 2 years). Noncitizens – including both adults and any accompanying children – who unlawfully enter the country may also be subject to detention and removal from the United States. *See, e.g.*, 8 U.S.C. §§ 1225(b), 1226, 1357.

In addition to the foregoing, federal law mandates certain procedures for the care and custody of minor children who enter the United States without authorization. In particular, the Department of Health and Human Services' ("HHS") Office of Refugee Resettlement ("ORR") is tasked with "the care and placement of unaccompanied alien children who are in Federal custody by reason of their immigration status." 6 U.S.C. §§ 279(a), (b)(1)(A); *see also* 8 U.S.C.

§ 1232(b)(1). An "unaccompanied alien child" ("UAC") is statutorily defined as someone who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), an agency must ordinarily "transfer the custody of [a] child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3). Once a UAC has been transferred to ORR custody, the child must "be promptly placed in the least restrictive setting that is in the best interest of the child" and considering the child's "danger to self, danger to the community, and risk of flight." *Id.* § 1232(c)(2)(A). Notably, UACs may not be released "upon their own recognizance." 6 U.S.C. § 279(b)(2)(B). Rather, ORR is required to "make[] a determination that the proposed custodian is capable of providing for the child's physical and mental well-being" before placing a child with any individual or entity. 8 U.S.C. § 1232(c)(3)(A).

### B. The *Flores* Agreement

In 1996, the federal government entered into a settlement agreement establishing a "nationwide policy for the detention, release and treatment of minors" (whether or not unaccompanied by parents) "in the custody of [federal immigration authorities]" (the "*Flores* Agreement"). *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing *Flores* Agreement found at *Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal.), ECF No. 101). Under the *Flores* Agreement, the government must expeditiously transfer any minor who cannot be released from custody to a non-secure, licensed facility. *Flores v. Lynch*, 828 F.3d at 902-03.

Significantly, the *Flores* Agreement applies only to minors; it does not concern or contemplate the "housing of family units and the scope of parental rights for adults apprehended with their children," nor does it "contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Flores v. Lynch*, 828 F.3d at 906. And while the *Flores* Agreement does give preference to the release of minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Id.* at 908. Nor does it provide any rights to adult detainees, including any rights of release. *Id.*

### C. Executive Branch enforcement

The Department of Homeland Security ("DHS"), of which CBP and ICE are components, has responsibility for border security, including enforcement of U.S. laws as to unlawful immigration. *See* Border Security, available at https://www.dhs.gov/topics/border-security. CBP agents patrolling the country's borders are organized into 129 stations within 22 sectors. *See* CBP Snapshot, available at https://www.cbp.gov/sites/default/files/assets/documents/2023-Feb/fy22-cbp-snapshot.pdf. These stations and sectors may have distinct areas of operational focus. *See, e.g.*, Border Patrol Overview, available at https://www.cbp.gov/border-security/along-us-borders/overview (describing examples of location-specific Operations).

Additionally, as alleged in the Complaint, the enforcement of federal immigration laws became the subject of several nationwide policy directives beginning in 2017. First, Executive Order 13767, 82 Fed. Reg. 8793, 2017 WL 388888 (Jan. 30, 2017) ("EO 13767"), directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law." EO 13767 § 6. In addition, EO 13767 directed DHS to exercise its parole authority "only on

a case-by-case basis in accordance with the plain language of the statute" and only when an individual "demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole." EO 13767 § 11(d). Second, in April 2017, the Department of Justice issued guidance directing federal law enforcement to prioritize the prosecution of several immigration-related offenses, including unlawful entry under 8 U.S.C. § 1325 and unlawful reentry under 8 U.S.C. § 1326. *See* U.S. DOJ Memo. on Renewed Commitment to Criminal Immigration Enforcement, available at https://www.justice.gov/opa/press-release/file/956841/download.

In April 2018, then-Attorney General Sessions issued a "Memorandum for Federal Prosecutors along the Southwest Border," https://www.justice.gov/opa/press-release/file/1049751/download, directing federal prosecutors – not DHS, which is not a component of DOJ – "to the extent practicable, and in consultation with DHS – to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)," which, as described above, imposes criminal liability for unlawful entry into the United States. In May 2018 (after the apprehension and separation at issue in this case), then-DHS-Secretary Nielsen directed DHS operational components at the border, to the extent practicable, to refer for criminal prosecution all those who illegally cross the border. *See C.M. v. United States of America,* No. 19-cv-05217 (D. Az.), Dkt. No. 372-3 at 16-17 ("Referral for Prosecution under 8 U.S.C. 1325(a), Improper Entry by Alien," dated May 11, 2018).

Following Secretary Nielsen's direction, DHS began to refer increased numbers of adults who had unlawfully crossed the southern border for prosecution. Minor children traveling with those adults were transferred to ORR custody, consistent with the requirements of the TVPRA. *See generally* 6 U.S.C. § 279; 8 U.S.C. § 1232(b)(3).

## II. Factual and procedural background

### A. Plaintiffs unlawfully cross the southern border into Arizona

Plaintiff F.C.C. and his minor daughter, A.C.L., allege that they are Honduran nationals. Comp. ¶ 12. In March 2014, after unlawfully crossing the U.S. southern border, Plaintiff F.C.C. was removed from the United States. *See* Declaration of Shawn J. Jordan ("Jordan Decl.") ¶ 10; *see also* Declaration of Lillian C. Rangel ("Rangel Decl.") ¶ 6. In March 2018, Plaintiff F.C.C. again unlawfully entered the United States, this time bringing with him his minor daughter, Plaintiff A.C.L.; F.C.C.'s wife, however, remained behind in Honduras. *See* Compl. ¶¶ 42, 70.

Plaintiffs allege that they crossed the southern border from Mexico into the United States near the town of Florence, Arizona, on or about May 1, 2018. *Id.* ¶ 43.[2] Shortly thereafter, Plaintiffs were apprehended by CBP agents. *Id.*; *accord* Jordan Decl. ¶ 9. Plaintiffs acknowledged to CBP officers that they had unlawfully entered the country and that they did not have documents allowing them to be lawfully present in the United States. *See* Jordan Decl. ¶ 9.

Because they had unlawfully entered the United States, Plaintiffs were apprehended and transported to a CBP station in Yuma, Arizona. *See id.* ¶ 9.[3] CBP agents subsequently learned that Plaintiff F.C.C. had previously been removed from the United States for unlawful entry. *See* Jordan Decl. ¶ 10; *see also* Compl. ¶ 46. As a result, Plaintiff F.C.C. was amenable for prosecution under 8 U.S.C. § 1326, which, as described above, makes it a criminal offense for one who has previously been removed to unlawfully reenter the United States.

---

[2] CBP records reflect that Plaintiffs crossed into the United States on the evening of April 30, 2018. *See* Jordan Decl. ¶ 9.

[3] Plaintiffs suggest that they were taken to the Florence Correctional Center immediately after their arrest. See Compl. ¶ 44. Records from ICE, however, reflect that F.C.C. was transported to the Florence Service Processing Center, in Florence, Arizona, on May 8, 2018, and was transferred to the Florence Correctional Facility two days later. *See* Rangel Decl. ¶ 5. F.C.C. remained there until May 22, 2018, and he was removed to Honduras the next day. *Id.* ¶ 8.

### B. Plaintiffs are separated in Arizona

Because Plaintiff F.C.C. was subject to criminal prosecution, Plaintiff A.C.L. was designated a UAC pursuant to 6 U.S.C. § 279(g)(2). *See* Jordan Decl. ¶¶ 11-12; *see also* 8 U.S.C. § 1232(a)(3) (describing process for custody of unaccompanied children "who are apprehended at the border of the United States or at a United States port of entry"). Consequently, Plaintiffs were separated from one another on or about May 1, 2018, while they remained in CBP custody in Arizona. *See* Jordan Decl. ¶ 12; *accord* Compl. ¶¶ 46-48.

Plaintiff F.C.C was detained by CBP agents at the Yuma Station before being transferred into ICE custody and held at the Florence Correctional Facility, also in Arizona. *See* Jordan Decl. ¶ 15; Rangel Decl. ¶ 5. Plaintiff F.C.C. remained in federal custody in Arizona during the entirety of the relevant period. *See* Jordan Decl. ¶¶ 9, 15; Rangel Decl. ¶ 9. At no time did he travel to New York between his apprehension at the southern border and his eventual removal on May 23, 2018. *See* Jordan Decl. ¶¶ 9, 15; *see also* Rangel Decl. ¶ 9.

Plaintiffs were initially detained in the same Arizona facility following their separation; however, Plaintiff A.C.L. was transferred into ORR custody on or about May 2, 2018. *See* Declaration of James De La Cruz ("De La Cruz Decl."), ¶ 4; *see also* Jordan Decl. ¶ 13; Compl. ¶ 58. Specifically, Plaintiff A.C.L. was flown from a CBP facility in Arizona to New York, where she was then transported to Mercy First, an ORR-funded charitable organization that provides care and shelter for UACs. *See* De La Cruz Decl. ¶ 4; *see also* Compl. ¶ 58. She remained at Mercy First for approximately four months, until an immigration judge issued the voluntary departure order that enabled her to return to Honduras and rejoin her mother (who had remained in Honduras) and F.C.C. (who had returned there). *See* Compl. ¶¶ 69, 70; *accord* De La Cruz Decl. ¶ 5.

Since that time, Plaintiffs were paroled into the United States. *Cf.* Comp. ¶ 12. They do not reside in New York. Pltfs.' Mar. 1, 2023 Ltr., ECF No. 20, at 1. Upon information and belief, Plaintiffs reside in Houston, Texas.

### C. Plaintiffs commence this action in New York

Plaintiffs commenced this FTCA action alleging five torts stemming from their separation from one another in Arizona: (i) intentional infliction of emotional distress; (ii) negligent infliction of emotional distress; (iii) negligence; (iv) loss of consortium; and (v) abuse of process. *See* Compl. (Counts I – V). The Complaint asserts that Plaintiffs "currently reside in the United States" but does not disclose in what state. *See id.* ¶ 12. The Government sought a pre-motion conference ("PMC") on February 23, 2023, arguing, among other things, that this action should be transferred on venue grounds because Plaintiffs do not live in this district and because the challenged acts – namely, Plaintiffs' separation – occurred in Arizona. Def.'s PMC Ltr., ECF No. 18.[4] On March 1, 2023, the Court waived the PMC and directed the parties to brief only the issue of venue.[5]

### LEGAL STANDARD

Where a defendant moves to dismiss a complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3), "the plaintiff bears the burden of showing that venue in the district is proper" in the first instance. *Feng Chen v. Sessions*, 321 F. Supp. 3d 332, 335 (E.D.N.Y. 2018). If venue is determined to be improper, the court must dismiss the action or, in the interest of justice, may transfer the case to a district in which it could have been properly filed. 28 U.S.C. § 1406(a); *NY Metro Radio Korea, Inc. v. Korea Radio USA, Inc.*, No. 07-cv-4123, 2008 WL 189871, at *3

---

[4] The Government also sought dismissal, on multiple grounds, to the extent that the Court were to find that any part of the torts asserted had occurred in New York, as well as additional threshold bases for dismissal. *See* Def.'s PMC Ltr., ECF No. 18 at 2-4.

[5] The Court further noted that the Government may renew the PMC request for the remainder of its proposed motion if the Court determines that this action should remain in the Eastern District of New York. *See* Mar. 3, 2023 Order.

(E.D.N.Y. Jan. 18, 2008). "Whether dismissal or transfer is appropriate lies within the sound discretion of the trial court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993).

Even if a plaintiff establishes a *prima facie* case that his preferred venue is proper, a court may still transfer an action for the convenience of the witnesses and in the interest of justice. *See* 28 U.S.C. § 1404(a); *Mohsen v. Morgan Stanley & Co. Inc.*, No. 11-cv-6751, 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) ("The purpose of § 1404(a) is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."). The party seeking to transfer venue in those circumstances must show that transfer is warranted by clear and convincing evidence. *See N.Y. Marine & Gen. Ins. Co. v. Lafargee N. Am.*, 599 F.3d 102, 114 (2d Cir. 2010).

A court may consider affidavits and materials outside of the pleadings on a motion to transfer venue. *See Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 176 (E.D.N.Y. 2003); *see also Mohsen*, 2013 WL 5312525, at *3 (collecting cases).

## ARGUMENT

Although Plaintiffs unlawfully entered the United States in Arizona, were apprehended in Arizona, were detained together in Arizona, and were separated in Arizona, Plaintiffs commenced this action in the Eastern District of New York. But Plaintiffs' only connection to this district is that A.C.L. was temporarily and safely housed at residential shelter in Syosset, New York, after she was separated from F.C.C. in Arizona. *See* Compl. ¶ 58. The Complaint does not allege that either Plaintiff lives in this district, nor does it allege that Plaintiff F.C.C. has even *been* to this district. As a result, the Eastern District of New York is not a permissible venue under the FTCA. Even if it were, the Court should, in the interest of justice, transfer this matter to the District of

Arizona – where the operative events took place and where most witnesses are likely located – or to the district where Plaintiffs reside.

## I. Under § 1402(b), the Eastern District of New York is not a proper venue for this FTCA suit

Under the FTCA, tort claims may be litigated against the United States "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Here, Plaintiffs do not reside in New York. *See* Pltfs.' Mar. 1, 2023 Ltr., ECF No. 20, at 1.[6] Accordingly, venue is only proper in this district if "the act or omission complained of," *i.e.*, the separation, occurred here. 28 U.S.C. § 1402(b).

It did not. The gravamen of Plaintiffs' claim is that various "federal officers" and "officials" wrongfully separated F.C.C. and A.C.L. *See* Compl. ¶¶ 88-112 (Counts I – V). As Plaintiffs themselves put it, "[a]ll of Plaintiffs causes of action – intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, loss of consortium, and abuse of process – arise from the Government's separation of Plaintiffs." Pltfs.' Mar. 1, 2023 Ltr., ECF No. 20, at 2 (quotations and alterations omitted). That separation occurred in Arizona, as all parties agree. *Id.* So did the relevant CBP and ICE actions leading up to Plaintiffs' separation, as – again – Plaintiffs admit. For example, Plaintiffs concede that they entered the country and were apprehended by CBP agents in Arizona, Compl. ¶ 43, that they were initially detained in Arizona, *id.* ¶ 44,[7] and that A.C.L. "was put on an airplane from Arizona to New York" following their initial detention, *id.* ¶ 58. Moreover, F.C.C. was removed to Honduras from Arizona and alleges no connection of his own to New York. *Id.* ¶ 56.

---

[6] According to the information available to the Government, Plaintiffs live in Houston, Texas.
[7] Plaintiffs allege that they were transported to the Florence Correctional Center by CBP, Compl. ¶ 44, but CBP records indicate that Plaintiffs were held together at the Yuma station in Yuma, Arizona. *See* Jordan Decl. ¶ 9; *see also* Rangel Decl. ¶ 5 (noting that F.C.C. was transported to Florence Correctional Center on May 10, after A.C.L. had already been transported to Mercy First).

Notwithstanding the centrality of Arizona in their own pleadings, Plaintiffs maintain that the Eastern District of New York is a permissible venue because A.C.L. was safely housed in a residential shelter located in Syosset, New York, after Plaintiffs' separation in Arizona until she could be released. *See* Pltfs.' Mar. 1, 2023 Ltr., ECF No. 20, at 1. But Plaintiffs do not allege that New York was the locus of any particular tort; rather, Plaintiffs simply emphasize that the *effects* of the allegedly tortious separation (in Arizona) were *felt* by one Plaintiff, A.C.L., in New York.[8] The location where an injury happens to be felt or treated, however, is distinct from the location where the "act or omission complained of occurred." 28 U.S.C. § 1402(b). Indeed, "[c]ourts have interpreted the second prong of § 1402(b) to mean that a complained of act or omission can give rise to proper venue in only one judicial district." *Moler v. Wells*, 18 F.4th 162, 165 n.5 (5th Cir. 2021) (collecting cases); *see also Reuber v. U.S.*, 750 F.2d 1039, 1048 (D.C. Cir. 1984) ("Congress has specified the district in which the act occurred as the 'only' district, other than where the plaintiff resides, where a claim may be brought, and thereby created a strong negative presumption against courts finding discretionary pendent venue elsewhere." (citation omitted)), *abrogated on other grounds by Kauffman v. Anglo-Am. Sch. of Sofia*, 28 F.3d 1223 (D.C. Cir. 1994). Furthermore, "the Supreme Court has already rejected a reading of the place where 'the act or omission occurred' as including any place where the conduct causes injury," albeit in the analogous circumstance of determining which state's substantive law to apply under the FTCA. *Reuber*, 750 F.2d at 1047 (citing *Richards v. United States*, 369 U.S. 1, 9-10 (1962)). Plaintiffs' attempt to manufacture venue in a district where they do not live and where the allegedly tortious act did not take place should be rejected.

---

[8] To the extent that Plaintiffs allege that A.C.L. experienced a tort unrelated to the separation while in the custody of Mercy First, for example, based on inadequate care at Mercy First, their claims would be barred by the FTCA's independent contractor exception. *See* Gov't PMC Ltr., ECF No. 18, at 2.

In short, the allegations in the Complaint are necessarily predicated on acts and omissions – namely, the separation of Plaintiffs – that purportedly occurred in Arizona, not New York. Because the Eastern District of New York is not where "the act or omission complained of occurred," this action should be transferred to the District of Arizona or to the district in which Plaintiffs reside. *See, e.g.*, *Larca v. United States*, No. 11-cv-3952, 2012 WL 6720910, at *3 (S.D.N.Y. Dec. 16, 2012).

## II. **Alternatively, the Court should transfer this action to the District of Arizona in the interests of justice and for the convenience of the witnesses**

Even if the Court were to determine that this district is a *permissible* venue under the FTCA, it should nonetheless transfer this case to the District of Arizona under 28 U.S.C. § 1404(a), because that is where the operative acts occurred and where most witnesses likely reside.

A court is authorized, pursuant to 28 U.S.C. § 1404(a), to transfer an action to a more suitable venue in the interest of justice:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

In assessing whether to transfer venue, courts generally apply a two-part test: (1) could the action have been brought in the proposed forum, and (2) does the balance of convenience and justice favor transfer. *See Wald v. Bank of Am. Corp.*, 856 F. Supp. 2d 545, 548-49 (E.D.N.Y. 2012); *accord Burgos v. United States*, No. 16-cv-7091 (RA), 2017 WL 2799172, at *2 (S.D.N.Y. June 27, 2017). While the party requesting transfer must show that it is warranted by clear and convincing evidence, *N.Y. Marine*, 599 F.3d at 114, both elements are easily satisfied here.

**A. This action could have been commenced in the District of Arizona**

This action could have (and should have) been commenced in Arizona because the operative facts took place there. As noted in Part I above, Plaintiffs allege that federal officers or officials apprehended them, detained them, and separated them in Arizona. *See generally* Compl., ECF No. 1; *see also* Jordan Decl. ¶¶ 9-13. That separation gives rise to all of Plaintiffs' claims. *See* Pltfs.' Mar. 1, 2023 Ltr., ECF No. 20, at 2. In other words, Plaintiffs' separation from one another in Arizona is the "act or omission complained of" for purposes of venue, such that this action could have been commenced there. 28 U.S.C. § 1402(b). Consequently, Arizona is the appropriate venue for this action.

**B. The balance of relevant factors strongly favors transferring this matter to Arizona**

Because this action could have been commenced in Arizona, the only remaining question is whether the interest of justice warrants transfer. In assessing that question, courts frequently look to nine factors: (1) the convenience of the witnesses; (2) the locus of operative facts; (3) the convenience of the parties; (4) the plaintiff's choice of forum; (5) the location of relevant documents and physical evidence; (6) the availability of process to compel attendance of unwilling witnesses; (7) the relative means of the parties; (8) the forum's familiarity with the governing law; and (9) judicial economy and the interests of justice. *Delta Air Lines, Inc. v. Assoc. of Flight Attendants, CWA*, 720 F. Supp. 2d 213, 217 (E.D.N.Y. 2010); *see also Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62-63 (2013) (explaining that courts consider both public and private factors in assessing convenience of the witnesses and interest of justice). Of those, the convenience of the witnesses "is typically regarded by courts as the most important factor in considering a motion to transfer pursuant to § 1404(a)." *Delta*, 720 F. Supp. 2d at 218. Even so, "[t]here is no strict formula for the application of these factors, and no single factor is

determinative." *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 250-51 (E.D.N.Y. 2010).

The factors weigh heavily towards transfer. Indeed, another Court in this district recently reached the same conclusion under nearly identical circumstances. *See W.P.V.*, 2023 WL 1991426. There, as here, the plaintiffs commenced an action under the FTCA for claims arising from their separation at the southern border, in that case near El Paso, Texas. *Id.* at *1. Much like Plaintiffs here, the plaintiffs in *W.P.V.* initiated an action in the Southern District of New York because *W.P.V.*'s son was transferred to and temporarily housed at Cayuga Home for Children, a non-governmental shelter located in the Bronx, notwithstanding the plaintiffs' apprehension and separation in Texas. *Id.* The Government moved to transfer venue in *W.P.V.* to the Western District of Texas, pursuant to 28 U.S.C. § 1404(a), arguing that "Plaintiffs' entry into the United States, their detention following entry, their subsequent separation, and [father] W.P.V.'s confinement and criminal prosecution" all occurred in Texas, such that most witnesses would therefore also be located in Texas. *Id.*, at *1. The Court agreed, finding that transfer was warranted under the relevant factors because Texas was the "center of gravity of the litigation." *Id.* at *4. The Court should find the same here and transfer this action to the District of Arizona. *See Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." (citations omitted)).

    i.    <u>The convenience of the witnesses strongly favors transfer</u>

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Schuyler v. Sun Life Assurance Co.*, No. 20-cv-10905

(RA) (BCM), 2021 WL 5853991, at *3 (S.D.N.Y. Dec. 9, 2021) (cleaned up); *accord Rindfleisch*, 752 F. Supp. 2d at 252 (collecting cases). The aim of this factor is not necessarily to tally the number of witnesses in each proposed forum, but to assess the materiality of their anticipated testimony. *See Williams v. Swack*, No. 12-cv-1552 (CBA), 2013 WL 5423791, at *4 (E.D.N.Y. Sept. 26, 2013), *report & recommendation adopted*; *see also Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006).

The Government anticipates that the most material witnesses in this case will be located in or close to the District of Arizona. That is unsurprising. Plaintiffs allege that they unlawfully crossed the United States-Mexico border near Florence, Arizona, where they were quickly apprehended by CBP agents. *See* Compl. ¶ 43. They were then transferred to the Yuma Station, also in Arizona, for detention. *Id.* ¶ 44; Jordan Decl. ¶ 9. Plaintiffs were detained together in Arizona and allegedly separated from each other by federal agents in Arizona. Compl. ¶ 48; *see also* Jordan Decl. 9. And while Plaintiff A.C.L. was transferred from Arizona to a non-governmental facility in New York (*i.e.*, Mercy First), Compl. ¶ 58, Plaintiff F.C.C. remained in detention in Arizona until his eventual removal to Honduras, *id.* ¶¶ 50, 56; *see also* Rangel Decl. ¶ 9.

Based upon those allegations, the federal officers and agents who would likely be called as witnesses in this action are predominantly located in and around Arizona. Indeed, CBP records have preliminarily identified *twenty-four* (24) agents and supervisors who were involved in the apprehension and detention of Plaintiffs in Arizona. *See* Jordan Decl. ¶ 16. Of those, twenty are currently assigned to or located in Arizona. *Id.* Three others are located at or near the southern border. *Id.* Similarly, ICE's records reflect that those individuals with knowledge of F.C.C.'s detention in ICE custody are located in Arizona. *See* Rangel Decl. ¶ 11. Requiring such a multitude

of witnesses to travel to New York (potentially multiple times) would be both costly and inefficient. It would also take numerous federal officers away from their enforcement and processing duties for days at a time. *See* Jordan Decl. ¶ 17. Under these circumstances, transfer would manifestly aid the convenience of the witnesses. *See W.P.V.*, 2023 WL 1991426, at *4.

By contrast, there appear to be few, if any, witnesses located in New York. And while courts sometimes presume that government employees are considered "available" throughout the country, that presumption carries less weight where none of the government employees with personal knowledge of the relevant facts is named as an individual defendant. *Barry v. United States*, No. 21-cv-7684 (BCM), 2022 WL 4467504, at *6 (S.D.N.Y. Sept. 26, 2022); *see also W.P.V.*, 2023 WL 1991426, at *4. Nor does that presumption mitigate the Government's burden to produce numerous witnesses for deposition and trial in New York.

Moreover, Mercy First – the ORR-funded shelter where A.C.L. was temporarily housed in Nassau County – is not a defendant to this action, and Plaintiffs do not appear to allege that Mercy First staff committed any tortious conduct relating to the manner in which they cared for Plaintiff A.C.L. Even if they had, the independent contractor exception to the FTCA would bar their claims, *Korotkova v. U.S.*, 990 F. Supp. 2d 324, 327-29 (E.D.N.Y. 2014), casting doubt on the relevance of any such witnesses. *See Rindfleisch*, 752 F. Supp. 2d at 255 (explaining that "even if some of plaintiffs' witnesses reside in the Eastern District of New York, the Court is doubtful that these witnesses will provide more material testimony than the witnesses located" at the defendant's headquarters). Accordingly, this factor weighs strongly in favor of transfer.

ii. The operative facts occurred in the District of Arizona, favoring transfer

"The locus of the operative facts is a primary factor in determining a § 1404(a) motion to transfer." *Alpha Indus., Inc. v. Alpha Clothing Co., LLC*, No. 21-cv-87 (KPF), 2021 WL 2688722,

at *6 (S.D.N.Y. June 30, 2021). Indeed, the locus of operative facts and the location of material witnesses "bear on where the 'center of gravity' of the action rests." *Id.*; *see also Guccione v. Harrah's Mkt'g Servs. Corp.*, No. 06-cv-4361 (PKL), 2009 WL 2337995, at *8 (S.D.N.Y. July 29, 2009) ("Courts traditionally give significant weight to the locus of the operative facts of a case, and routinely transfer cases when the principal events occurred in another district and the principal witnesses are located there." (internal citations omitted)). "To determine where the locus of operative facts lies, courts look to the site of events from which the claim arises." *Guccione*, 2009 WL 2337995, at *8 (internal quotations omitted).

This action arises from Plaintiffs' unlawful entry into the United States and their ensuing separation, both of which happened in Arizona. Plaintiffs do not suggest otherwise. *See* Pltfs.' Mar. 1, 2023 Ltr., ECF No. 20, at 2. As the Complaint recounts: (i) Plaintiffs unlawfully entered the country by crossing the border into Arizona, Compl. ¶ 43; (ii) Plaintiffs were apprehended by CBP agents in Arizona, *id.*; (iii) Plaintiffs were transferred to the Yuma Sector and detained together in Arizona, *id.* ¶ 44; (iv) Plaintiffs were separated from each other at that same facility in Arizona, *id.* ¶ 48; (v) Plaintiff FCC was deported from Arizona to Honduras, *id.* ¶ 56; and (vi) A.C.L. "was put on an airplane from Arizona to New York" following her initial detention, *id.* ¶ 58. As the court in *W.P.V.* found under analogous circumstances, "the operative events that involve the Government and trigger its potential liability under the FTCA predominantly, if not entirely, occurred in the" district where the separation occurred, here, Arizona. *W.P.V.*, 2023 WL 1991426, at *6.

The fact that Plaintiff A.C.L. alleges that she was temporarily housed in Nassau County following the separation is irrelevant insofar as Plaintiffs do not specify what, if any, tort occurred in New York. To the contrary, Plaintiffs admit that they were "initially separated from each other

in Arizona" and that their claims arise from the alleged pain of that separation. Pltfs.' Mar. 1, 2023 Ltr, ECF No. 20, at 1. Under these circumstances, Arizona is clearly the locus of operative facts and this litigation's center of gravity. *See W.P.V.*, 2023 WL 1991426, at *6 ("And most significantly given Plaintiffs' claims against the Government, the Western District of Texas also is where the initial act of father-son separation occurred, as W.P.V. allegedly was separated from W.P.O. while at the El Paso processing center."); *see also Barry*, 2022 WL 4467504, at *5 (transferring matter to Southern District of Texas where plaintiff crossed the border in Texas and was detained in Texas, notwithstanding current New York residence). This factor plainly weighs in favor of transfer.

### iii. The convenience of the parties favors transfer

Arizona also appears to be the more convenient forum for the parties. The operative facts occurred in Arizona, and most – if not all – of the relevant federal witnesses with firsthand knowledge of the facts would be located near Arizona. *See* Jordan Decl. ¶ 16; Rangel Decl. ¶ 11. Transferring this action to Arizona would therefore allow many of those individuals to provide testimony without the need for significant additional travel or time away from their high-volume work at the border. *See* Jordan Decl. ¶ 17.

Arizona also appears to be just as, if not more, convenient for Plaintiffs. "The logical relevant starting point in determining the convenience of the parties is their residence." *Neil Bros.*, 425 F. Supp. 2d at 328. Here, Plaintiffs do not live in New York. They are believed to live in Texas, which is closer to Arizona than it is to New York. At the very least, litigating this action in Arizona would not appear to be *more* inconvenient than doing so in New York. *See W.P.V.*, 2023 WL 1991426, at *5; *cf. Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 988 (E.D.N.Y. 1991) (transferring matter from Eastern District of New York to the Southern District of Florida even

where convenience of the parties did not weigh in favor of transfer).[9] This factor therefore weighs in favor of transfer.

### iv.    The Plaintiffs' choice of forum

A plaintiff's choice of forum is ordinarily entitled to some deference; however, the significance of this factor is considerably diminished where the forum is neither a plaintiff's home district nor the place where the acts or omissions purportedly giving rise to liability occurred. *See, e.g.*, *Rindfleisch*, 752 F. Supp. 2d at 251 (collecting cases); *see also W.P.V.*, 2023 WL 1991426, at *7 (explaining that deference to plaintiffs' choice of forum is "significantly diminished where, as here, the operative facts have no connection to the chosen district." (internal quotations omitted)). In addition, courts ascribe this factor less weight than in the context of a *forum non conveniens* motion because the result is simply the transfer of venue, not dismissal of the complaint. *See Jones v. U.S.*, No. 02-cv-1017(JG), 2002 WL 2003191, at *3 (E.D.N.Y. Aug. 26, 2002).

The Eastern District of New York is not Plaintiffs' home district, nor is it the district where the acts or omissions complained of took place. As a result, Plaintiffs' choice of forum is entitled to diminished weight, and the Court should not ascribe it much deference. *See W.P.V.*, 2023 WL 1991426, at *7.

### v.    The location of physical proof

With the rise of electronic discovery, courts have recently concluded that the location of paper documents and databases "bears little relationship to the ease or difficulty of conducting discovery." *Barry*, 2022 WL 4467504, at *6. To that point, the Government is currently unaware of any documents that may only be viewed in New York or Arizona. This factor is therefore neutral

---

[9] Plaintiffs' counsel are not located in New York either. Rather, they are located in Washington, D.C. And while Washington is closer to New York than Arizona, "any inconvenience that might enure [sic] to counsel is unpersuasive and generally not a factor to consider." *Hernandez*, 761 F. Supp. 2d at 988.

in the transfer analysis. *See Monfried v. Sigma Fin. Corp.*, No. 15-cv-2806 (VSB), 2016 WL 9724977, at *4 (S.D.N.Y. June 14, 2016).

### vi. The availability of compulsory process favors transfer

Because a subpoena may only command a person's attendance at trial or a deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person," Fed. R. Civ. P. 45(c)(1), the Court must consider whether transfer will have an impact on its ability to compel the attendance of unwilling witnesses. *Hernandez*, 761 F. Supp. at 990. Here, many of the witnesses with firsthand knowledge of Plaintiffs' allegations are likely to live near the location where Plaintiffs' separation occurred – Arizona – which is more than 100 miles from the Eastern District of New York. *See* Jordan Decl. ¶ 16; Rangel Decl. ¶ 11. And while the Court could compel current federal employees to travel from Arizona to New York, it bears emphasis that the allegations here are roughly five years old, and federal employees with firsthand knowledge of the facts may have left, or could in the future leave, government service. If that were to happen, the Court would be unable to compel those witnesses to attend trial in this matter. In fact, it appears that at least one potential federal witness has already retired. *See* Jordan Decl. ¶ 16 (noting one individual with possible knowledge of events has retired but still lives in Arizona). As a result, this factor favors transfer. *See Hernandez*, 761 F. Supp. at 990 (finding that availability of compulsory process favored transfer where most non-party witnesses resided in Florida rather than New York).

### vii. The means of the parties

The relative means of the parties is ordinarily not considered unless litigating in the proposed forum would be "prohibitively expensive" or "unduly burdensome" to Plaintiffs' finances. *Rindfleisch*, 752 F. Supp. 2d at 260-61; *see also Alpha Indus.*, 2021 WL 2688722, at *10 ("A party arguing for or against a transfer because of inadequate means must offer documentation

to show that transfer (or lack thereof) would be unduly burdensome to his finances."). Plaintiffs make no such claim. And because neither Plaintiffs nor their counsel are located in this district, or even this state, the parties' means should make little difference. If anything, litigating in Arizona – where the majority of relevant witnesses are likely to be located – may be more cost-effective for all parties. Under these circumstances, this factor is neutral.

      viii.    <u>The forum's familiarity with the governing law and similar actions favors transfer</u>

Under the FTCA, the court must apply the substantive law of the state where the alleged tortious act or omission occurred. *See* 28 U.S.C. § 1346(b); *see also FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State – the source of substantive liability under the FTCA."). As noted above, Plaintiffs' purported claims arise from their separation from one another in Arizona, not any (thus far unidentified) tort in New York. *See* Compl. ¶ 48; *accord* Pltfs.' Mar. 1, 2023 Ltr, ECF No. 20, at 2. Consequently, Arizona law would presumably apply. *See W.P.V.*, 2023 WL1991426, at *7 (explaining that this factor favored transfer where court "would most likely apply Texas tort law to Plaintiffs' claims against the Government concerning their initial apprehension, detention, and separation – all of which occurred in Texas.").

While this Court is, of course, capable of applying Arizona law, a federal court in Arizona would obviously have much more familiarity doing so. *See Jones*, 2002 WL 2003191, at *4 (transferring matter where "[a] federal district court sitting in Georgia would certainly be more familiar with Georgia law than a district court sitting in New York."); *accord Barry*, 2022 WL 4467504, at *7 (noting that transfer to Texas would be "more efficient" where Texas law applied). Thus, this factor favors transfer.

ix.   <u>Judicial economy and the interests of justice clearly favor transfer</u>

Finally, courts consider whether, based on the totality of the circumstances, the interests of justice and judicial economy support transfer. Courts often find that this factor favors transfer when a "case is still in its early stages and minimal discovery ha[s] taken place." *Neil Bros.*, 425 F. Supp. at 334; *accord Barry*, 2022 WL 4467504, at *8 (noting that there would be "little loss in judicial economy" by transferring action because the case was at its "earliest stages."). In addition, the interests of justice are better served by transferring this action to its center of gravity, where the operative facts took place, where most witnesses are likely to be found, and where numerous cases raising similar claims are already proceeding. *See Alpha Indus.*, 2021 WL 2688722, at *8. This factor therefore favors transfer.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court grant its motion to transfer this action to the District of Arizona or, in the alternative, to the district in which Plaintiffs reside, and for such other relief that the Court deems just and proper.

Dated:  March 24, 2023
          Brooklyn, New York

BREON PEACE
United States Attorney
Eastern District of New York
*Counsel for Defendant*
271-A Cadman Plaza East
Brooklyn, New York 11201

By:   <u>/s/ Christopher Volpe</u>
        Christopher D. Volpe
        Kimberly A. Francis
        Layaliza Soloveichik
        (718) 254-6188
        (718) 254-6147
        (718) 254-6298

christopher.volpe@usdoj.gov
kimberly.francis@usdoj.gov
layaliza.soloveichik@usdoj.gov