**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| F.C.C., on his own behalf and on behalf of his minor child, A.C.L., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:22-cv-05057 |
| United States of America | ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

## Table of Contents

I.   Factual Background..................................................................................................1

II.  Legal Standard......................................................................................................3

III. Argument...............................................................................................................4

   a.   The Eastern District of New York is a Proper Venue ...............................................4

   b.   The Court Should Decline to Transfer this Case Based on the Second Circuit Factors
   Addressing Transfer of Venue........................................................................................7

   c.   Defendant's Reliance on W.P.V. is Misplaced .......................................................14

IV.  Conclusion..........................................................................................................15

Table of Authorities

Cases                                                                                                Page(s)

*A.I.I.L v. Sessions*,
   No. CV-19-00481-TUC-JCH, 2022 U.S. Dist. LEXIS 61582
   (D. Ariz. March 31, 2022) ........................................................................ 1, 15, 6, 7

*Adams v. Key Tronic Corp.*,
   1996 U.S. Dist. LEXIS 19244 (S.D.N.Y. Dec. 31, 1996) .................................... 12

*Alt. Recording Corp. v. Project Playlist, Inc.*,
   603 F. Supp. 2d 690 (S.D.N.Y. 2009) ........................................................ 11, 12

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*,
   474 F. Supp. 2d 474 (S.D.N.Y. 2007) ............................................................... 8

*Babb v. United States*,
   C/A No. 19-487-JFA-PJG, 2019 U.S. Dist. LEXIS 133202 (D.S.C Aug. 8, 2019) ................ 6

*Certain Underwriters at Lloyd's London v. Amtrak*,
   14-CV-04717 (FB) (CLP), 2015 U.S. Dist. LEXIS 31288
   (E.D.N.Y. March 13, 2015) .....................................................................9,10

*Corley v. United States*,
   11 F.4th 79 (2d Cir. 2021) ........................................................................ 3

*Easyweb Innovations, LLC v. Facebook, Inc.*,
   888 F. Supp. 2d 342 (E.D.N.Y. 2012) ........................................................... 14

*ESPN, Inc. v. Quiksilver, Inc.*,
   581 F. Supp. 2d 542 (S.D.N.Y. 2008) ............................................................. 9

*Flood v. Carlson Rests. Inc.*,
   94 F. Supp. 3d 572 (S.D.N.Y. 2015) ............................................................. 11

*Flores v. United States*,
   142 F. Supp. 3d 279 (E.D.N.Y. 2015) ..................................................... 11, 13, 9

*Franz v. United States*,
   591 F. Supp. 374 (D.D.C. 1984) .................................................................. 6

*Fuji Photo Film Co. v. Lexar Media, Inc.*,
   415 F. Supp. 2d 370 (S.D.N.Y. 2006) ........................................................... 12

*Glotser v. Boardwalk Regency, LLC*,
   20 Civ. 2654 (JPC) (SLC), 2023 U.S. Dist. LEXIS 29679 (S.D.N.Y. Feb 22, 2023)………...7

*Hershman v. UnumProvident Corp.*,
   658 F.Supp.2d 598 (S.D.N.Y. 2007) ............................................................ 8,9

*Hines v. Overstock.com, Inc.*,
    668 F. Supp. 2d 362 (E.D.N.Y. 2009) ........................................................... 13, 14

*Hoffman v. Blaski*,
    363 U.S. 335 (1960) .................................................................................... 3

*Hubbel-Petang v. Hotel Rsrv. Serv., Inc.*,
    No. 20 Civ. 10988 (GBD), 2022 U.S. Dist. LEXIS 36100 (S.D.N.Y. March 1, 2022) .......... 8

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*,
    419 F. Supp. 3d 395 (S.D.N.Y. 2005) ............................................................. 10

*JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*,
    960 F. Supp. 2d 383 (E.D.N.Y. 2013) ............................................................. 9

*Kwatra v. MCI Inc.*,
    96 Civ. 2491 (DC), 1996 U.S. Dist. LEXIS 17883 (S.D.N.Y. Dec. 3, 19)………………….12

*MK Sys. v. Schmidt*,
    04 Civ. 8106 (RWS), 2005 U.S. Dist. LEXIS 3877 (S.D.N.Y. March 10, 2005) ................... 8

*Moler v. Wells*,
    18 F.4th 162 (5th Cir. 2021) ...................................................................... 5

*Morris v. United States*,
    Docket No. 2:13-176354, 2013 U.S. Dist. LEXIS 176354 (Dec. 16, 2013) ................................ 6

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
    559 F.3d 102 (2d Cir. 2010) ....................................................................... 7

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am. Inc.*,
    599 F.3d 102, 113-114 (2d. Cir 2010) ............................................................. 15

*Pasini v. Gruppo Editoriale, Inc.*,
    21-cv-6697 (BMC), 2022 U.S. Dist. LEXIS 94838 (E.D.N.Y. May 25, 2022)……………….. 3

*Reuber v. United States*,
    750 F.2d 1039 (D.C. Cir. 1984) .................................................................. 5, 6

*Royal Ins. Co. of Am.* V. *United States*,
    998 F. Supp. 351 (S.D.N.Y. 1998) ................................................................. 7

*Steward Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ................................................................................. 3

*Transatlantic Reinsurance Co. v. Cont'l Ins. Co.*,
    No. 03 Civ. 3227 (CMB), 2003 U.S. Dist. LEXIS 20933 (S.D.N.Y. Nov. 19, 2003) .......... 11

**Statutes**

28 U.S.C. § 1402 ........................................................................... 1, 2, 4, 5

28 U.S.C. § 1404 ........................................................................................... 3

The FTCA allows claims to be litigated in the judicial district "wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Plaintiffs' claims of intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, loss of consortium, and abuse of process stem both from the Government's initial separation of F.C.C. from A.C.L. in Arizona, as well as the over four months that the Government kept them separated by detaining then-seven-year-old A.C.L. in this district. Venue is proper in the Eastern District of New York and there is no reason for this case to be transferred elsewhere.

## I.    Factual Background

On May 1, 2018, F.C.C. and A.C.L., natives of rural Honduras, crossed the border into Arizona seeking asylum. Compl. ¶ 43. Shortly after they arrived in Arizona, F.C.C. and A.C.L. turned themselves in to Customs and Border Patrol ("CBP") Agents and were placed in a holding cell. *Id.* ¶ 44. Two days later, F.C.C. and A.C.L. were taken to another room and were informed that A.C.L. was going to be taken away. *Id.* ¶ 48. Two CBP officers physically ripped seven-year-old A.C.L. from her father and carried her out of the room. *Id.* F.C.C. remained in Arizona and was deported shortly thereafter. *Id.* ¶¶ 52, 56.[1]

After A.C.L. was taken from her father, on approximately May 3, 2019, she was put on an airplane and taken to MercyFirst, a privately-owned shelter in this district. Compl. ¶ 58. A.C.L. was detained at MercyFirst for over four months, until September 19, 2018. *Id.* ¶ 69. During the time that A.C.L. was in New York she was sad and lonely, missing her family

---

[1] Defendant attempts to justify the separation because F.C.C. was "amenable for prosecution" because he had previously been removed from the country. Mot. at 7. Thus, Defendant separated F.C.C. from A.C.L. and designated her as unaccompanied. *Id.* at 7-8. While Plaintiffs dispute that F.C.C.'s "amenability for prosecution" would provide justification for the separation, this justification seems especially lackluster when Defendant does not appear to have prosecuted F.C.C.

terribly. *Id.* ¶ 62. She contracted the *varicella zoster* virus and suffered from itchy blisters, body aches and a fever. *Id.* ¶ 63. She also suffered from an eye infection. *Id.* ¶ 64. Rather than being able to be taken care of and comforted by her family while sick, she suffered thousands of miles away.

As the months wore on, A.C.L. became more distraught. A.C.L. had calls with her parents in Honduras while she was detained in New York, and she became more and more distressed after these calls. Compl. ¶ 65. Due to her intense emotional reactions, the staff at MercyFirst began monitoring her phone calls. *Id.* In July of 2018, A.C.L. told her social worker at MercyFirst that she was struggling with other children at the shelter. *Id.* ¶ 67. A.C.L.'s social worker noted that she was sad, homesick, and frustrated due to the prolonged separation from her family. *Id.* By September of 2018, A.C.L.'s emotional and social distress had escalated to the point that staff was concerned about her behavior, and A.C.L. said that she wanted to stop attending school. *Id.* ¶ 68.

During the months that Defendant kept A.C.L. in New York, F.C.C. was similarly suffering in Honduras. F.C.C. and his wife spent the majority their money to pay for phone calls to A.C.L. in New York. Compl. ¶ 73. They took regular eight-hour trips to the capital, Tegucigalpa, searching for answers on the precise whereabouts of their daughter and how they could reunite with her. *Id.* ¶ 74. F.C.C. and his wife heard rumors that children who had been separated from their parents in the United States were being given up for adoption and they were terrified they would never see their daughter again. *Id.* ¶ 76. The more than four months that A.C.L. was detained in this district caused immeasurable heartache and devastation for F.C.C. *Id.* ¶ 80. Even after they were reunited, both A.C.L. and F.C.C. have continued to suffer harm from the lengthy separation inflicted by Defendant. *Id.* ¶¶ 80-86.

## II.     Legal Standard

In certain circumstances, "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A court uses a two-step analysis to determine whether to transfer an action. First, the court considers whether the case could have been brought in the district where the moving party seeks to transfer the case. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). If the party seeking transfer demonstrates that the case could have been brought in the proposed transferee district, the court has discretion to consider the motion to transfer based on an "individualized, case-by-case consideration of convenience and fairness." *Steward Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

District courts consider a number of factors when evaluating a motion to transfer: "(1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021). Some courts also consider "(8) the forum's familiarity with governing law and (9) trial efficiency and the interest of justice, based on the totality of the circumstances." *Pasini v. Gruppo Editoriale, Inc.*, 21-cv-6697 (BMC), 2022 U.S. Dist. LEXIS 94838 at *3 (E.D.N.Y. May 25, 2022) (internal quotations and citations omitted). "These factors are not exhaustive, there is no rigid formula for balancing them, and no single factor is determinative." *Id.* (citation omitted).

### III.    Argument

#### a.  The Eastern District of New York is a Proper Venue

The FTCA allows a claim to be brought "wherein the act or omission complained of occurred."  28 U.S.C. § 1402(b).  Defendant argues that their allegedly tortious actions did not occur in New York because, apparently, Defendant's only tortious behavior was the act of physically separating F.C.C. from A.C.L.  In Defendant's view, Plaintiffs were only injured during the moment they were physically separated, and not during the four months where Defendant kept seven-year-old A.C.L. from her family by detaining her *in this district.*

The Complaint describes, in detail, the injuries caused not only during the initial separation, but during the more than four months that Defendant detained A.C.L. in this district. The Complaint describes A.C.L.'s feelings of confusion and stress, how she became physically ill and had to suffer away from her family, and how her emotional and social distress worsened and became more and more concerning to the MercyFirst staff throughout her detention in New York.  *See* Compl. ¶¶ 58-68.  The Complaint alleges that A.C.L.'s suffering worsened over time such that she no longer wanted to attend school, and that staff at MercyFirst became concerned about her behavior.  *Id.* ¶ 68.

The Complaint also discusses the harms that F.C.C. suffered while A.C.L. was in this district.  While A.C.L. was detained in this district, F.C.C. and his wife spent nearly all of F.C.C.'s pay traveling three towns over so that they could call A.C.L. in this district.  Compl. ¶ 73.  Rumors spread that children who had been separated in the United States were going to be adopted, and F.C.C. was "terrified" and "devastated" that he would never see his daughter again. *Id.* ¶¶ 76, 80.  The Complaint further details how the lengthy separation has continued to effect F.C.C. and A.C.L.  This includes A.C.L. having tantrums, unexplained aggression, nightmares,

struggling to sleep, wetting the bed, and struggling in school. Compl. ¶ 83. F.C.C., too, has felt the ongoing effects due the trauma of being separated from his daughter for months. *Id.* ¶ 85.

While Defendant is correct the initial separation occurred outside this district, Defendant's conduct did not end in Arizona. Instead, it continued for the four additional months that Defendant injured F.C.C. and A.C.L. by detaining A.C.L. in this district rather than reuniting her with her family. The Government perversely portrays the situation as if A.C.L. voluntarily went on vacation in New York after a tortious act occurred in Arizona and is now trying to sue the Government in New York. Such a portrayal is both incorrect and offensive. Despite being aware of who A.C.L.'s father was and where he was located, Defendant took A.C.L. away from him, put her on an airplane, and shipped her to New York. Then, again while being fully aware of who A.C.L.'s parents were and where they were located, Defendant kept her in this district for months. F.C.C. and A.C.L. did not choose for A.C.L. to come to this district or to spend over four months here – that was Defendant's decision – a decision that contributed significantly to both A.C.L. and F.C.C.'s injuries.

Defendant argues that there can only be one district where an "act or omission complained of occurred." Mot. at 12. But the cases cited by Defendant are situations where the act or omission complained of occurred only in one district and the plaintiff attempted to lay venue in a different district. For example, in *Moler v. Wells*, 18 F.4ᵗʰ 162 (5th Cir. 2021), the plaintiff was a prisoner who complained of not receiving proper medical care for his injury while a prisoner in the Eastern District of Arkansas. *Id.* at 165. The court found that the location of his original injury – the Western District of Louisiana -- was not proper venue because his claim -- improper medical care -- only occurred in Arkansas. *Id.* at 165. Similarly, Defendant quotes from *Reuber v. United States.*, 750 F.2d 1039, 1049 (D.C. Cir. 1984), for the proposition that

there is a "strong negative presumption against courts finding discretionary pendent venue." Mot. at 12. But Plaintiffs here are not asking the Court to find pendent venue. Plaintiffs allege that venue is proper here because a substantial portion of the acts or omissions complained of occurred in this district.[2]

"Under the prevailing interpretation of section 1402(b), venue is proper . . . if sufficient activities giving rise to the plaintiff's cause of action took place [in the district]." *Franz v. United States*, 591 F. Supp. 374, 378 (D.D.C. 1984). The FTCA does not require that the acts or omissions giving rise the plaintiffs' claims can only be in one district. *See, e.g.*, *A.I.I.L v. Sessions*, No. CV-19-00481-TUC-JCH, 2022 U.S. Dist. LEXIS 61582 at *25-26 (D. Ariz. March 31, 2022) (separated family case finding venue proper in Arizona because the child plaintiff was detained there, even though the separation occurred in Texas, and explaining that "Arizona is one of the possible districts wherein 'the act or omission occurred.'); *Babb v. United States*, C/A No. 19-487-JFA-PJG, 2019 U.S. Dist. LEXIS 133202 at *1-3 (D.S.C Aug. 8, 2019) (finding proper venue in South Carolina for FTCA claim where events and omissions occurred in South Carolina and North Carolina); *Morris v. United States*, Docket No. 2:13-176354 at *3-4, 2013 U.S. Dist. LEXIS 176354 at *3-4 (Dec. 16, 2013) (finding venue proper in the Northern District of Florida or the Northern District of Texas for FTCA claim as the acts or omissions occurred in both places); *Franz*, 591 F. Supp. 374 at 377-79 (declining to transfer case and finding venue proper

---

[2] In *Reuber*, the plaintiff argued that the acts or omissions occurred in his chosen venue because his letter of reprimand, which was written, given to him, and maintained in another district, was leaked to a news source that was published in the plaintiff's chosen venue and posted on bulletin boards in the plaintiff's chosen venue. 750 F.2d 1039, 1046-47. The court found this was insufficient for venue because the plaintiff could not point to an act by a Government employee that caused him tortious injury in his chosen district. *Id.* In contrast, Plaintiffs here can point to the Government's act of detaining A.C.L. in this district for four months.

Washington D.C. or Virginia due to sufficient activities in both locations, in addition to proper venue in Pennsylvania where the plaintiff resided).

Here, the acts or omissions occurred in both Arizona and the Eastern District of New York. Yes, the initial separation of F.C.C. and A.C.L. was extremely traumatic and contributed to the torts alleged in the Complaint. But equally contributory to those torts was the prolonged period that F.C.C. and A.C.L. were separated from one another, and the bulk of that time occurred while A.C.L was in this district. Indeed, in the Complaint, paragraphs 58-78 discuss the time that A.C.L. was in New York, and paragraphs 79-87 discuss the effects of the prolonged separation. *See* Compl. Moreover, "venue does not require that a majority of the events have occurred in the district where the suit is filed, nor does it require that the events in that district predominate." *A.I.I.L*, 2022 U.S. Dist. LEXIS 61582 at *26 (citation and quotations omitted). As detailed in the Complaint, both F.C.C. and A.C.L.'s suffering continued and was exacerbated as the separation continued for weeks and months. It was Defendant's decision to detain A.C.L. in this district for over four months, and venue is appropriate here.

> **b. The Court Should Decline to Transfer this Case Based on the Second Circuit Factors Addressing Transfer of Venue**

"A plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal Ins. Co. of Am. V. United States*, 998 F. Supp. 351, 353 (S.D.N.Y. 1998) (citations omitted). To succeed on a motion to transfer venue "[t]he moving party must demonstrate that [the] factors militate toward transfer by clear and convincing evidence." *Glotser v. Boardwalk Regency, LLC*, 20 Civ. 2654 (JPC) (SLC), 2023 U.S. Dist. LEXIS 29679 at *7 (S.D.N.Y. Feb 22, 2023) (citing *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 559 F.3d 102, 113-14 (2d Cir. 2010). While Plaintiffs do

not dispute that this case could have been brought in Arizona, Defendant has not met its burden

--- to show, by clear and convincing evidence, that transfer is warranted.

1.  Plaintiffs' Choice of Forum

"A plaintiff's choice of forum is to be given substantial weight and should not be disturbed unless the balance of convenience and justice weighs heavily in favor of defendant's proposed forum." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 486 (S.D.N.Y. 2007) (internal quotations and citation omitted). This is true even where significant events occurred outside the plaintiff's chosen forum. *See Hubbel-Petang v. Hotel Rsrv. Serv., Inc.*, No. 20 Civ. 10988 (GBD), 2022 U.S. Dist. LEXIS 36100 at * 14-15 (S.D.N.Y. March 1, 2022) (denying motion to transfer venue even where the operative facts were outside the chosen forum because Defendants "fail[ed] to have met their burden of demonstrating by clear and convincing evidence that transfer is appropriate.").

Defendant's primary argument is that the acts or omissions did not take place in this district. In making this argument, Defendant ignores that F.C.C. and A.C.L.'s separation was prolonged for over four months while Defendant detained A.C.L. in this district. The plaintiff's choice of forum "is generally accorded more deference where there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim." *MK Sys. v. Schmidt*, 04 Civ. 8106 (RWS), 2005 U.S. Dist. LEXIS 3877 at *18 (S.D.N.Y. March 10, 2005). Here, a substantial portion of the acts or omissions complained of *did* occur in this district. It was the Defendant that chose to send A.C.L. to this district, keep her in this district for over four months, and pay MercyFirst for to detain her in this district. Plaintiffs' choice of forum should be granted significant deference. *Hershman v. UnumProvident Corp.*, 658 F.Supp.2d 598, 601 (S.D.N.Y. 2007) (explaining that "[t]o overcome th[e] presumption in

favor of plaintiff's choice of forum, [a] defendant must make a clear showing that the proposed transferee district is a more convenient one, and that the interests of justice would be better served by a trial there") (internal citations and quotations omitted). This factor clearly weighs against transfer.

2. <u>The Convenience of the Witnesses</u>

"The convenience of the witnesses is an important factor in considering whether transfer is appropriate." *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 398 (E.D.N.Y. 2013). However, "[t]he convenience of non-party witnesses is accorded more weight than that of party witnesses." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008) (quotations and citations omitted). Additionally, the Government can easily require its own witnesses to participate wherever the case is tried. *Flores v. United States*, 142 F. Supp. 3d 279, 287 (E.D.N.Y. 2015) (citations omitted).

Defendant asserts that requiring government witnesses to travel to New York would be "costly and inefficient." Mot. at 17. This argument carries little weight since Defendant can require its employees to participate in any location. *Certain Underwriters at Lloyd's London* v. *Amtrak*, 14-CV-04717 (FB) (CLP), 2015 U.S. Dist. LEXIS 31288 at *7 (E.D.N.Y. March 13, 2015) (explaining that the convenience of the defendant's witnesses is accorded little weight). And if the Government decides it is "too burdensome" for its witnesses to travel to New York, it can use "video-recorded depositions or arrange to have them testify by live video." *Flores*, 142 F. Supp. 3d at 287.

Moreover, contrary to the Government's assertions otherwise, Plaintiffs expect to call several non-party witnesses in New York. Specifically, Plaintiffs anticipate calling staff at MercyFirst who were charged with caring for A.C.L. and will testify to the impact that the

prolonged separation had on A.C.L. Ex. A, Declaration of F.C.C. ¶¶ 3-4. For example, and as described in the Complaint, staff at MercyFirst began noticing A.C.L having extreme difficulty talking with her parents on the phone, exhibiting behavior problems, and not wanting to go to school. Compl. ¶¶ 58-69. There are several individuals who worked with A.C.L. during her time at MercyFirst, including social workers responsible for counseling her and facilitating her telephone calls with her parents, and staff responsible for her daily living, schooling, and activities. Ex. A, ¶¶ 3-4. As Defendant correctly notes, MercyFirst is not a defendant in this action; accordingly, these individuals are non-party witnesses who are likely to live in this district. And, unlike the Government's witnesses, the convenience of these non-party witnesses is afforded more significant weight. *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 3d 395, 402 (S.D.N.Y. 2005) ("The convenience of non-party-witnesses is accorded more weight than that of party witnesses.").

In sum, it appears there are two primary groups of fact witnesses apart from the Plaintiffs: (1) Government witnesses who are primarily located outside this district; and (2) Non-party witnesses at MercyFirst who are primarily located in this district. The convenience of the non-party witnesses is afforded greater weight. Accordingly, this factor weighs in favor of retaining venue in this district.

### (3) The Location of Relevant Documents and Relative Ease of Access to Sources of Proof

"The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *Certain Underwriters at Lloyd's London*, 2015 U.S. Dist. LEXIS 31288 at *9 (citations omitted). The Government asserts this is a neutral factor, and Plaintiffs agree. Accordingly, this factor does not weigh in favor of transfer.

(4) <u>The Convenience of the Parties</u>

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." *Flood v. Carlson Rests. Inc.*, 94 F. Supp. 3d 572, 578 (S.D.N.Y. 2015) (citation omitted). Defendant argues that it would be more convenient for Defendant to litigate in Arizona based on its witnesses being primarily located in Arizona. Mot. at 19. Outside of the convenience of its witnesses, which was addressed in Factor 2, *supra*, and which is of limited weight, Defendant has offered no reason why it would be inconvenient to litigate in this district. This is unsurprising as Defendant, the United States, is staffed by competent and capable United States Attorneys in all districts, including this one.

Defendant then takes the unusual step of arguing that it would apparently be more convenient for Plaintiffs to litigate this case in Arizona. Mot. at 19. The Court should not countenance Defendant's speculation that it would be more convenient for Plaintiffs to litigate this matter in Arizona. Plaintiffs have expressed their preferred and more convenient forum by filing their case in this district. "A transfer is disfavored where it simply shifts the inconvenience from one party to the other." *Flores v. United States*, 142 F. Supp. 3d at 288. Accordingly, the convenience of the parties does not weigh in favor of transfer, as transfer is more convenient for Defendant, but not for Plaintiffs.

(5) <u>The Locus of Operative Facts</u>

To determine the locus of operative facts, the court looks "to the site of events from which the claim arises." *Transatlantic Reinsurance Co. v. Cont'l Ins. Co.*, No. 03 Civ. 3227 (CMB), 2003 U.S. Dist. LEXIS 20933 at *14 (S.D.N.Y. Nov. 19, 2003). Based on the factual circumstances, there are sometimes "several loci of operative facts." *Alt. Recording Corp. v.*

*Project Playlist, Inc.*, 603 F. Supp. 2d 690, 696-97 (S.D.N.Y. 2009).  Indeed, unlike a choice of law analysis, which must ultimately conclude that one jurisdiction's law applies, "venue analysis may determine that there are several loci of operative facts."  *Adams v. Key Tronic Corp.*, 1996 U.S. Dist. LEXIS 19244 at *11 n.1 (S.D.N.Y. Dec. 31, 1996); *see also Kwatra v. MCI Inc.*, 96 Civ. 2491 (DC), 1996 U.S. Dist. LEXIS 17883 at *10 (S.D.N.Y. Dec. 3, 1996) (finding the loci of operative facts to have occurred in Washington D.C. and Virginia).

The loci of operative facts in this case are Arizona and the Eastern District of New York. Plaintiffs were initially separated from each other in Arizona.  The separation was prolonged for months while A.C.L. was detained in the Eastern District of New York.  The Complaint alleges significant, important, events related to Plaintiffs' claims that occurred in both of these locations. Where, as here, more than one district is a locus of operative facts, this factor is neutral.  *Alt Recording Corp.*, 603 F. Supp. at 697.

(6) The Availability of Process to Compel the Attendance of Unwilling Witnesses

Because a district court can only subpoena witnesses within the district or within 100 miles of the district, this factor requires consideration of the Court's power to compel unwilling witnesses.  *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006). However, because a party's witnesses can be compelled to participate without a subpoena, the Court need not consider party witnesses when evaluating this factor.  *Id.*

The Government has identified one individual with "possible knowledge of events" who has retired from Government Service and lives in Arizona.  Mot. at 21.  Accordingly, if the case remains in this district, that individual's in-person testimony would not be able to be compelled (but, as discussed above, could readily be secured through video deposition).  The other possible

twenty-three witnesses the Government has identified are not impacted by this factor as these

witnesses continue to work for the Government.

In contrast, Plaintiffs anticipate calling several witnesses from MercyFirst who interacted

with A.C.L. during her four months at the center.  Ex A, ¶¶ 3-4.  None of these witnesses are

employees of a party and thus could not be compelled to testify if this case is transferred to

Arizona.  Accordingly, this factor weighs in favor of retaining venue in this district.

(7) <u>The Relative Means of the Parties</u>

Where, as here, neither party argues that litigating the case would impose undue hardship,

this factor is neutral.  *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 370 (E.D.N.Y. 2009).

The parties relative means in this case "certainly do[] not support" transfer.  *Id.*

(8) <u>The Forum's Familiarity with Governing Law</u>

The claims at issue here are intentional infliction of emotional distress, negligent

infliction of emotional distress, negligence, loss of consortium, and abuse of process.  Compl. ¶¶

88-112.  Where an action does not involve "complex questions . . . courts in this district accord

little weight" to the governing law factor.  *Flores*, 142 F. Supp. 3d at 290 (citation omitted).  Tort

law claims, "which sound in common law negligence" are not considered complex.  *Id.*

Whether Arizona or New York's tort law applies, this Court is well equipped to handle

resolution of Plaintiffs' claims.  *See Certain Underwriters at Lloyd's London*, 2015 U.S. Dist.

LEXIS at *11 ("Federal courts are deemed capable of applying the law of other states.") (citation

omitted).  Accordingly, this factor does not weigh in favor or transfer.

(9) <u>Trial Efficiency and the Interest of Justice, Based on the Totality of the
Circumstances</u>

Defendant has offered no evidence, clear and convincing or otherwise, that trial

efficiency or the interest of justice, supports transfer.  *Certain Underwrites at Lloyds London*,

2015 U.S. Dist. 31288 at * 12 ("Altogether, [defendant] has failed to show how considerations of trial efficiency and the interests of justice warrant transfer."). It is true that this case is in the early stages of litigation, but that is not itself a reason to disturb the Plaintiffs' choice of forum, which is afforded great deference. *Hines*, 668 F. Supp. 2d at 368 ("A plaintiff's choice of forum is entitled to great weight") (citations and quotations omitted). This factor does not weigh in favor of transfer.

### c. Defendant's Reliance on W.P.V. is Misplaced

Defendant relies heavily on another separated family case, *W.P.V. v. United States*, No. in arguing that this case should be transferred. This Court should not rely on the decision in *W.P.V.*

In determining whether to transfer venue, the court should apply and weigh the factors "in the context of the individualized circumstances of the particular case." *Easyweb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 348 (E.D.N.Y. 2012). While *W.P.V.* also involves a family separated at the border, the factual circumstances of that case differ from those in the instant case. In *W.P.V.* a father and his four-year-old son crossed the border near El Paso. 2023 U.S. Dist. LEXIS 25144 at *2-3. The U.S. Attorney's office then approved the criminal prosecution of W.P.V. and transferred him to the custody of the United States Marshals Service pending his prosecution. *Id.* at 3. The son was transferred to Cayuga Centers in the Bronx for approximately one month before he was released to the care of his aunt in Texas. *Id.* These factual circumstances are different than those alleged here – where F.C.C. and A.C.L. were separated but it does not appear F.C.C. was ever prosecuted and A.C.L. was detained in New York for more than four months in New York. It would be inappropriate to rely on the ultimate outcome of the transfer motion in *W.P.V.* rather than conduct a factor-by-factor analysis.

Moreover, in contrast to *W.P.V.*, other courts have found venue is appropriate for a separated family based on the location of the child's detention. For example, in *A.I.I.L. v Sessions*, the court found that Arizona was the appropriate venue for Plaintiff D.V.S.H. and her father based on the location of D.V.S.H.'s detention even though the family was initially separated in Texas. *A.I.I.L.*, 2022 U.S. Dist. LEXIS 61582 at *25-26. As the Court explained, "D.V.S.H. was transported to Arizona and is alleged to have suffered harm here. The resulting trauma experienced by D.S.V.H. and her father comport with the assertion that Arizona is one of the possible districts wherein the act or omission complained of occurred." *Id.*

Ultimately, this Court must weigh the factors in this case and determine if Defendant has provided clear and convincing evidence that the transfer should be granted. *New York Marine & Gen. Ins. Co. v. Lafarge N. Am. Inc.*, 599 F.3d 102, 113-114 (2d. Cir 2010) (explaining that the "clear and convincing" evidence standard is appropriate for ruling on a motion to transfer venue). The Court should not rely on the factual circumstances of other cases to determine whether transfer of venue is appropriate here.

## IV. Conclusion

For the foregoing reasons, Plaintiffs request this Court deny the Government's motion to transfer venue and maintain this action in Plaintiff's chosen forum, the Eastern District of New York.


Dated: April 7, 2023                                  Respectfully submitted,


                                                       /s/ Rachel Nadas_____
                                                       Rachel Nadas, admitted *pro hac vice*
                                                       Matthew K. Handley
                                                       HANDLEY FARAH & ANDERSON PLLC

1201 Connecticut Avenue NW, Suite 200K
Washington, DC 20036
(202) 559-2411
rnadas@hfajustice.com
mhandley@hfajustice.com

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document using the Court's CM/ECF system, which will serve it on all counsel of record.

Dated:  April 7, 2023                                    /s/ Rachel Nadas _____
                                                                    Rachel Nadas